FILED

2004 Dec-10  PM 01:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| SOUTHTRUST BANK, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | |
| | ] | CV-00-BE-3480-S |
| U.S. XPRESS ENTERPRISES, INC., | ] | |
| | ] | |
| Defendant. | ] | |
| | ] | |
| | ] | |

## MEMORANDUM OPINION

Before the court is defendant U.S. Xpress Enterprises, Inc.'s Motion for Summary

Judgment (Doc. 85).   For the reasons stated on the record at the hearing on November 22, 2004,

and for the reasons summarized in this opinion, the court grants the motion.

## I.  Undisputed Facts

Dedicated Transportation Services, Inc., was an airfreight forwarder that contracted with

motor carriers, including USX, for delivery of its customers' freight.  DTSI was a subsidiary of

Professional Transportation Group, Ltd., Inc.

SouthTrust had a perfected security interest in all of PTG's assets, including the assets of

DTSI.  When PTG defaulted on its loan obligations to SouthTrust, SouthTrust proceeded to sell

DTSI's assets.  On November 27, 2000, SouthTrust agreed to sell DTSI's assets to a USX

affiliate, but the agreement was contingent on SouthTrust not receiving a better offer than the

USX affiliate's.  SouthTrust subsequently received a better offer from Forward Air.  On Sunday,

December 3, 2000, SouthTrust and Forward Air closed the transaction in which Forward Air purchased DTSI's assets, including DTSI's accounts receivable for freight charges on goods in transit and for freight charges on prior shipments.  At the time, USX was in the process of hauling fifty-six truckloads of cargo for DTSI.  In addition, DTSI owed USX $1.8 million in past due freight charges.

On Saturday, December 2, 2000, the day before SouthTrust completed the sale of DTSI's assets to Forward Air, in an attempt to obtain payment from Forward Air and SouthTrust for the in-transit shipments and the amounts past due from DTSI, USX asserted a lien on the fifty-six truckloads of DTSI's customers' cargo in transit that day.[1]  In response, under the rights of its contract with SouthTrust, Forward Air demanded that SouthTrust put one million dollars of the purchase price for DTSI's assets in escrow, of which SouthTrust eventually had to return $333,333.33 to Forward Air.  Forward Air also assured USX that it would pay the shipping charges on the freight currently in transit *if* USX completed timely delivery of the freight.  Along with its promise to pay the shipping charges upon timely delivery, Forward Air included the following statement:

> While our interest is in an agreed resolution of this conflict, be assured that Forward Air and SouthTrust Bank intend to protect our respective interests in the assets Forward Air has purchased which includes the good will of DTSI and its relationship with former DTSI customers. As you are well aware, any delay in the timely completion of delivery of the In-Transit shipments would be extremely detrimental and we believe your actions constitute unlawful interference with the rights of SouthTrust Bank, Forward Air, and its

---

[1]At the hearing on November 21, 2004, SouthTrust acknowledged that USX had a right to assert a lien on the in-transit goods for payment of the shipment of those goods.  Though SouthTrust argued that Forward Air's mere promise to pay for the shipment of those goods ended USX's right to assert the lien, SouthTrust could provide no legal authority for its position.

customers.

Doc. 85, Ex. 3 to Ex. 3.

On Monday, December 4, USX agreed to release the in-transit shipments. At Forward Air's direction, USX delivered many of the loads to Forward Air's terminals instead of DTSI's terminals.

SouthTrust brings this action for tortious interference with business relations because USX's delay in the delivery of the freight devalued DTSI's assets and caused SouthTrust to have to return part of the purchase price to Forward Air. *See* Doc. 1, p.3-5. The court has already entered partial summary judgment dismissing SouthTrust's only other claim for relief in this case, a request for declaratory judgment. *See* Doc. 111.

## II. Discussion

When a district court reviews a motion for summary judgment under Federal Rules of Civil Procedure 56, it must determine two things: (1) whether any genuine issues of material fact exist; and, if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). To succeed, the moving party bears the burden of establishing both prongs of the summary judgment test. The nonmoving party may defeat the motion for summary judgment by establishing either genuine issues of material fact or that the movant is not entitled to judgment as a matter of law.

Substantive law determines which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute raises a genuine issue of fact "only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson*, 477 U.S. at 249. Material facts affect the outcome of the trial under governing law.

3

477 U.S. at 248. To determine whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 249; *Patton v. Triad Guar. Ins. Corp.,* 277 F.3d 1294, 1296 (11th Cir. 2002); *Witter v. Delta Airlines, Inc.,* 138 F.3d 1366, 1369 (11th Cir. 1998).

After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and if the moving part is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which the jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc*., 849 F.2d 570, 575 (11th Cir. 1998). The court should not weigh the evidence, or make determinations as to the credibility of witnesses because these decisions fall to the provence of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Thus, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham*, 193 F.3d at1282 (quoting *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988)).

USX moves for summary judgment on the grounds that it is not a stranger to the relationship between SouthTrust and Forward Air and on the grounds that it was justified in interfering in that relationship. No genuine issues of material fact exist as to whether USX was a stranger to SouthTrust's relationship with Forward Air. USX is entitled to judgment as a matter

4

of law that USX was not a stranger and, therefore, not liable for tortious interference with the

SouthTrust/Forward Air relationship.  Because USX was not a stranger to the

SouthTrust/Forward Air relationship, the court does not need to address whether USX's actions

were justified.

Under Alabama law,[2] to establish that USX tortiously interfered with its business

relations with Forward Air, SouthTrust must show the following: the existence of a contract or

business relationship; that USX knew of the contract or business relation; that USX intentionally

interfered with the business relation; and that USX's interference caused SouthTrust to suffer

damages.  *See Gross v. Lowder Realty Better Homes & Gardens*, 494 So. 2d 590, 597 (Ala.

1986).  In addition, "it is essential to a claim of tortious interference with contractual relations

that the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract

with which the defendant allegedly interfered."  *BellSouth Mobility v. Cellulink, Inc.*, 814 So. 2d

203, 212 (Ala. 2001) (citations omitted); *see also Tom's Foods, Inc. v. Carn*, No. 1021095, 2004

WL 1859640 at *8-10 (Ala. Aug 20, 2004); *Waddell & Reed, Inc. v. United Investors Life Ins.*

*Co.*, 875 So. 2d 1143, 1157 (Ala. 2003).

In *Waddell*, the Alabama Supreme Court clarified the requirement that the defendant be a

"stranger" to the injured relationship:

---

[2]At the hearing on November 21, 2004, the parties agreed that Alabama law governs
USX's claim for tortious interference with business relations.  Alabama law applies because a
district court must apply the choice of law doctrine of the forum in which it sits–in this case,
Alabama.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941) (holding that
the *Erie* doctrine generally requires district courts to apply the choice-of-law rules of the forum
state); *Trumpet Vine Inv's., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir.
1996).  In tort actions, Alabama courts apply the law of the state where the injury occurred,
which the parties in this case agree was Alabama.  *See* Doc.114, 3-4.

> For the sake of clarity, we adopt the term "participant" to describe an individual or entity who is not a party, but who is essential, to the allegedly injured relationship and who cannot be described as a stranger. One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract. In such an instance, the participant is not a stranger to the business relationship and the interwoven contractual arrangements define the participant's rights and duties with respect to the other individuals or entities in the relationship. If a participant has a legitimate economic interest in and a legitimate relationship to the contract, then the participant enjoys a privilege of becoming involved without being accused of interfering with the contract.

875 So. 2d 1143, 1157 (Ala. 2003).

In clarifying the "stranger" doctrine, which the Alabama Supreme Court derived from Georgia precedent, the *Waddell* court quoted

> a four-part test used by Georgia courts for determining whether a defendant is a stranger to a contract: "[A] defendant is not a 'stranger' to a contract or business relationship when: (1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; *or* (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations."

*Waddell*, 875 So. 2d at 1156 (quoting *Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc.*, 952 F. Supp. 1575 (N.D. Ga. 1996), *aff'd*, 137 F.3d 1356 (11th Cir.1998)) (emphasis added).[3]

USX was not a party to the SouthTrust/Forward Air contract, but nevertheless was an essential participant in the SouthTrust/Forward Air relationship and cannot be described as a

---

[3]In quoting *Britt*, the Alabama Supreme Court stated, "We decline to retreat from our earlier acceptance of precedent from Georgia.  We continue to find cases applying Georgia law to be helpful."  *Waddell*, 875 So. 2d at 1156.

6

stranger.  In its letter to USX demanding delivery of the DTSI freight, Forward Air described how "essential" USX was to the SouthTrust/Forward Air relationship: Forward Air's interest in DTSI's assets purchased from SouthTrust "include[d] the good will of DTSI and its relationship with former DTSI customers," and "any delay in [USX's] timely completion of delivery of the In-Transit shipments would be extremely detrimental" to the SouthTrust/Forward Air relationship.   Doc. 85, Ex. 3 to Ex. 3.  Because USX's contractual relationship with DTSI was so essential to the SouthTrust/Forward Air relationship, USX was not a stranger, but "a participant in a business relationship arising from interwoven contractual arrangements that included" the SouthTrust/Forward Air contract.  *See Waddell*, 875 So. 2d at 1156-57.

       USX's essential contribution to DTSI's good relationship with its customers is not the only reason USX was an essential entity to the SouthTrust/Forward Air relationship and a party to a comprehensive interwoven set of contracts that included the SouthTrust/Forward Air contract.  The value of the SouthTrust/Forward Air contract depended on more than just DTSI's good relationship with its customers; the value of the contract also depended on the value of DTSI's accounts receivable Forward Air was purchasing as part of its deal with SouthTrust.  Some of those accounts receivable were for delivery of the fifty-six truckloads of freight DTSI owed USX for carrying.  In other words, USX's delivery of freight increased accounts receivable that in turn became part of the DTSI assets sold by SouthTrust to Forward Air.  The damages for which SouthTrust is now suing occurred precisely because USX was an essential entity to the SouthTrust/Forward Air relationship, and because USX's contractual relations with DTSI were intertwined with the SouthTrust/Forward Air contract.

       In addition to being "an essential entity to the purported injured relations" and a party "to

7

a comprehensive interwoven set of contracts or relations," USX satisfies at least one more of the four Georgia tests the *Waddell* court cited for determining whether a defendant is not a "stranger" to a contract.  Because timely delivery of the freight of DTSI's customers was so crucial to the value of the SouthTrust/Forward Air relationship, "the allegedly injured relations [were] inextricably... dependent upon the defendant's contractual or business relations."  *Waddell*, 875 So. 2d at 1156 (quoting *Britt*, 952 F. Supp. 1575 (N.D. Ga. 1996)).  SouthTrust would never have been forced to return part of the purchase price to Forward Air but for the very fact that the SouthTrust/Forward Air relationship was so inextricably dependant upon USX's fulfillment of its contractual relations with DTSI that USX's assertion of the lien devalued the SouthTrust/Forward Air contract.

As noted above, under Alabama law, a plaintiff cannot prevail on a claim for tortious interference with business relations *unless* the plaintiff can prove that the defendant was a stranger to the allegedly injured relationship.  *See BellSouth Mobility v. Cellulink, Inc.*, 814 So. 2d 203, 212 (Ala. 2001).  Because USX was not a stranger to the SouthTrust/Forward Air relationship, USX is entitled to judgment as a matter of law that it cannot be liable to SouthTrust for intentional interference in SouthTrust's relationship with Forward Air.  Therefore, the court grants USX's motion for summary judgment.

DONE and ORDERED this 10th day of December, 2004.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE